UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JENNIFER P.,[1]

                    Plaintiff,

          v.                                                    24-CV-91-LJV
                                                                DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

_____

On January 24, 2024, the plaintiff, Jennifer P. ("Jennifer"), brought this action

under the Social Security Act ("the Act").  Docket Item 1.  She seeks review of the

determination by the Commissioner of Social Security ("Commissioner") that she was

not disabled.[2]  Id.  On April 23, 2024, Jennifer moved for judgment on the pleadings,

Docket Item 6; on July 24, 2024, the Commissioner responded and cross-moved for

judgment on the pleadings, Docket Item 13; and on August 7, 2024, Jennifer replied,

Docket Item 14.

_____

[1] To protect the privacy interests of Social Security litigants while maintaining
public access to judicial records, this Court will identify any non-government party in
cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order,
Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov.
18, 2020).

[2] Jennifer applied for Supplemental Security Income ("SSI"), which is paid to a
person with a disability who also demonstrates financial need.  42 U.S.C. § 1382(a).

For the reasons that follow, this Court denies Jennifer's motion and grants the Commissioner's cross motion.[3]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation modified) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation modified) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

interpretation, the Commissioner's conclusion must be upheld.")  But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."  *Johnson*, 817 F.2d at 986.

**DISCUSSION**

**I.    THE ALJ'S DECISION**

On December 29, 2022, the ALJ found that Jennifer had not been under a disability since November 5, 2019, the date her application was filed.  *See* Docket Item 5 at 34.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. § 416.920(a).  *See id.* at 23–24.

At step one, the ALJ found that Jennifer "ha[d] not engaged in substantial gainful activity since . . . the application date."  *Id.* at 24.  At step two, the ALJ found that Jennifer suffered from four severe, medically determinable impairments: "bipolar disorder, schizophrenia, anxiety disorder, and attention deficit hyperactivity disorder (ADHD)."  *Id.* at 25.

At step three, the ALJ found that Jennifer's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 26.  More specifically, the ALJ found that Jennifer's impairments did not meet or medically equal listing 12.03 (schizophrenia spectrum and other psychotic disorders), 12.04 (depressive, bipolar, and related disorders), or 12.06 (anxiety and obsessive-compulsive disorders).  *Id.*  In assessing

3

Jennifer's mental impairments, the ALJ found that Jennifer was moderately impaired in all four domains: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing herself.  *Id.* at 26–27.

The ALJ then found that Jennifer had the residual functional capacity ("RFC")[4] to "perform work a full range of work at all exertional levels" except that:

> [Jennifer cannot] work around hazards such [as] unprotected heights[ or] moving mechanical parts[ and cannot climb] ladders[,] ropes[, or] scaffolds; [she must] avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants; [she c]an understand, remember[,] and carry out simple instructions and tasks; [she] can maintain attention and concentration and regular attendance at work for simple unskilled work; [she can have] no supervisory duties, no independent decision-making required, no strict production quotas as with assembly line work, [and] minimal changes in work routine and processes; and[ she can have] occasional interaction with supervisors, coworkers[,] and the general public.

*Id.* at 28.

At step four, the ALJ found that Jennifer had no past relevant work.  *Id.* at 32. But given Jennifer's age, education, and RFC, the ALJ found at step five that Jennifer could perform substantial gainful activity as a packager, warehouse worker, or groundskeeper.  *Id.* at 32–33; *see Dictionary of Occupational Titles* 920.587-018, 1991 WL 687916 (Jan. 1, 2016); *id.* at 922.687-058, 1991 WL 688132 (Jan. 1, 2016); *id.* at 406.687-010, 1991 WL 673342 (Jan. 1, 2016).  The ALJ therefore found that Jennifer

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

had not been under a disability since the date her application was filed.  *See* Docket

Item 5 at 34.

## II.    ALLEGATIONS

Jennifer argues that the ALJ erred in two ways.  *See* Docket Item 6-1 at 16–29.

First, she argues that the ALJ "cherry-picked the record, ignored [her] need for

supportive housing, and axiomatically failed to properly consider [her] mental

functioning."  *Id.* at 16–23.  Second, she argues that the ALJ failed to account for

limitations in the opinions of D. Brown, Psy.D., and S. Bhutwala, Ph.D.—opinions that

the ALJ found "persuasive."  *Id.* at 23–29.  For the reasons that follow, this Court

disagrees.

## III.    ANALYSIS

### A.  Limitations in Dr. Brown's and Dr. Bhutwala's Opinions

An ALJ must "weigh all of the evidence available to make an RFC finding that [is]

consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir.

2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).  But that does not mean

that an RFC must "perfectly correspond with any of the opinions of medical sources

cited in [an ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion

evidence, *see Rubin v. Martin O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 155 (2d

Cir. 2024).  So long as an ALJ considers all the medical evidence and appropriately

analyzes any medical opinions, an RFC consistent with the record is not error.  *See* 20

C.F.R. § 416.945; *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that

remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's

functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

On June 6, 2021, Dr. Brown completed a mental RFC assessment of Jennifer. *See* Docket Item 5 at 130–35. Dr. Brown opined that Jennifer had "[n]o evidence of limitation in" understanding, remembering, and carrying out very short and simple instructions and was "[n]ot significantly limited" in maintaining attention and concentration for extended periods; performing activities within a schedule; maintaining regular attendance; being punctual; sustaining an ordinary routine without special supervision; working near others without being distracted; making simple work-related decisions; interacting appropriately with others; accepting instructions and responding appropriately to criticism from supervisors; maintaining socially appropriate behavior; and being aware of normal hazards and taking appropriate precautions. *Id.* at 131–34. On the other hand, Dr. Brown found that Jennifer was "[m]oderately limited" in understanding, remembering, and carrying out detailed instructions; completing a normal workday and workweek without interruption; performing at a consistent pace; responding appropriately to change; setting realistic goals; and making plans independently. *Id.* Dr. Brown concluded that notwithstanding Jennifer's mental impairments, she "ha[d the] capacity for [the] basic mental demands of unskilled work." *Id.* at 135.

Just over a month later, on July 22, 2021, Dr. Bhutwala completed a similar assessment, reviewed the record, and affirmed Dr. Brown's findings. *See id.* at 150–54. Like Dr. Brown, Dr. Bhutwala concluded that Jennifer had the "capacity for [the] basic mental demands of unskilled work." *Id.* at 154.

The ALJ found Dr. Brown's and Dr. Bhutwala's opinions to be "generally persuasive" because they were "consistent with each other[]" and based on "comprehensive record analys[e]s" that were "well[ ]explained with record citations." *See id.* at 32.  Jennifer argues that in light of those "persuasive" opinions, the ALJ erred by not including restrictions in the RFC addressing their moderate limitations—that is, limitations in "completing a normal workday or workweek without interruptions from psychologically based symptoms" and "perform[ing] at a consistent pace without an unreasonable number and length of rest periods."  Docket Item 6-1 at 25–26.  But that argument is factually incorrect.

First, the RFC restricted Jennifer to "carry[ing] out simple instructions and tasks," performing only "simple unskilled work," and doing work with "no strict production quotas."  Docket Item 5 at 28.  Courts in this Circuit repeatedly have found such restrictions sufficient to account for moderate limitations like those about which Drs. Brown and Bhutwala opined.  *See, e.g.*, *Karl E. v. Comm'r of Soc. Sec.*, 2025 WL 3003714, at *5 n.5 (W.D.N.Y. Oct. 27, 2025) ("[T]he ALJ limited [the p]laintiff to 'simple tasks,' which accounts for [the p]laintiff's moderate difficulty in concentrating, persisting, or maintaining pace."); *Arthur M. v. Saul*, 2021 WL 2309884, at *4 (W.D.N.Y. June 7, 2021) ("[T]he restrictions imposed by the RFC, including that [the] plaintiff can perform only simple and routine tasks . . . are sufficient to account for [the] plaintiff's moderate limitations with regard to completing a normal workday or workweek without interruption as well as performing at a consistent pace without an unreasonable number and length of rest periods."); *see also Denise Marie T.-W. v. Comm'r of Soc. Sec.*, 2024 WL 4162490, at *6 (W.D.N.Y. Sept. 12, 2024) ("Moderate limitations in some or all areas of

7

mental functioning may be accounted for in an RFC by limiting a plaintiff to simple, routine work . . . .").  So the limitations incorporated in the RFC accounted for the limitations in Dr. Brown's and Dr. Bhutwala's opinions.  *See* Docket Item 3 at 28.

Jennifer specifically argues that the ALJ failed to address the opinions of Drs. Brown and Bhutwala that she was moderately limited in completing a normal workday and workweek without interruption and in performing at a consistent pace without breaks.  *See* Docket Item 6 at 24–29; Docket Item 14 at 5–7.  But both doctors explicitly found that Jennifer was not significantly limited in performing activities within a schedule, maintaining regular attendance, being punctual, and sustaining an ordinary routine without special supervision.  *See* Docket Item 5 at 132, 151.  And as noted above, both doctors found that notwithstanding Jennifer's moderate limitations, she "ha[d the] capacity for [the] basic mental demands of unskilled work."  *Id.* at 135, 154.  In other words, both found that Jennifer was capable of working if the work she did was unskilled.  The RFC's limitation to "simple unskilled work," *see id.* at 28, therefore was sufficient to account for what Drs. Brown and Bhutwala found were Jennifer's mental health issues, and Jennifer's argument rings hollow*, see, e.g., Matta*, 508 F. App'x at 56; *Young v. Berryhill*, 2019 WL 156262, at *6 (W.D.N.Y. Jan. 10, 2019) (finding that an "RFC [that wa]s consistent with the record as a whole" was not error).

In sum, the ALJ crafted an RFC that was consistent with the medical evidence in the record, including the opinions of Drs. Brown and Bhutwala.  Indeed, the ALJ explicitly addressed the limitations in those opinions and accounted for them in the RFC.  *See* Docket Item 3 at 28, 32.  Jennifer's argument that the RFC failed to incorporate limitations in opinions that the ALJ found persuasive therefore lacks merit.

8

### B. Consideration of Jennifer's Supportive Housing

An ALJ must determine "the extent to which [a claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [a claimant's] symptoms affect [his or her] ability to work." 20 C.F.R. § 404.1529(a). This is a two-step inquiry. *See Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010); *see* 20 C.F.R. § 404.1529(d). First, the ALJ "consider[s] whether there is an underlying medically determinable physical or mental impairment[] that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). "Second, once an underlying physical or mental impairment[] that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.*

The ALJ correctly applied the two-step inquiry here. At step one, he found that Jennifer's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Docket Item 5 at 29. At step two, however, he found that Jennifer's "statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ then acknowledged that he was required to consider other factors "in addition to the objective medical evidence when evaluating [the] intensity, persistence, and limit[ing] effects of [Jennifer's] symptoms, in recognition of the fact that an individual's symptoms can sometimes suggest a greater level of

severity of an impairment than can be shown by the objective medical evidence alone." *Id.* at 30. And he did exactly that, looking to the record to decide whether Jennifer was disabled.

Jennifer argues that in doing so, the ALJ "fail[ed] to consider [her] supportive housing" and that this failure "[wa]s a mischaracterization that infect[ed] the entire decision, making it impossible to determine [whether] the ALJ considered the record fully and fairly as he was required to do." Docket Item 6-1 at 18. But the ALJ's consideration of Jennifer's supportive housing is evident throughout his decision.

For example, at step three the ALJ noted that "[a]lthough [Jennifer] demonstrated intact recent and remote memory skills[,] . . . other evidence of record disclosed [that Jennifer] required extra support to adhere to her prescription medication regimen, attend appointments, maintain a safe living space, and [maintain] adequate hygiene." Docket Item 5 at 26–27. Likewise, in explaining Jennifer's RFC at step four, the ALJ noted that Jennifer "obtained social services support for housing . . ., which included a homeless shelter, a group home, and an individual apartment with increasingly reduced case management." *Id.* at 28. And in addressing the opinion of Susan Santarpia, Ph.D., the ALJ explained that "Dr. Santarpia's conclusion that [Jennifer's] mental impairments were non-severe [wa]s not at all persuasive because the record clearly established that [Jennfer's] mental symptoms impacted her daily activities, *which included her living arrangements*." *Id.* at 31–32 (emphasis added). So far from failing to account for Jennifer's supportive housing, the ALJ considered it and balanced it against the other evidence throughout his decision.

But even if that were not so, the ALJ's decision still would have been supported by substantial evidence.  For example, and as noted above, the ALJ considered the opinions of Drs. Brown and Bhutwala, *see* Docket Item 5 at 32, who both found that Jennifer could meet the "basic mental demands of unskilled work," *id.* at 135, 154.  And the RFC restricted Jennifer to precisely that—"carry[ing] out simple instructions and tasks" and performing only "simple unskilled work."  *Id.* at 28.

What is more, Dr. Santarpia found Jennifer to be less limited than even Drs. Brown and Bhutwala found.  *Compare id.* at 130–35, 150–54, *with id.* at 503–07.  Dr. Santarpia opined that Jennifer had no limitations in understanding, remembering, and applying simple *and complex* instructions; using judgment to make work-related decisions; interacting appropriately with others; sustaining concentration and performing at a consistent pace; sustaining an ordinary routine and regular work attendance; maintaining personal hygiene and dressing appropriately; and being aware of normal hazards and taking appropriate precautions.  *Id.* at 506.  She also found that Jennifer had only mild-to-moderate limitations in "regulating emotions, controlling behavior, and maintaining well-being."  *Id.*  And Dr. Santarpia concluded that Jennifer's psychiatric problems "d[id] not appear to be significant enough to interfere with [her] ability to function on a daily basis."  *Id.*  Nonetheless, the ALJ gave Jennifer the benefit of the doubt, credited her need for supportive housing, and found her to be more limited than Dr. Santarpia opined.  *See id.* at 31–32.  That was to Jennifer's benefit and was not error.  *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (finding an ALJ's deviation "from consultative examiners' recommendations to *decrease* [a

11

claimant's] RFC abased on other evidence in the record" was not error (emphasis in original)).

Jennfer repeatedly insists that the ALJ "cherry-picked the record to downplay" her impairments.  *See* Docket Item 6 at 16; *see, e.g.*, *id.* at 17 ("An ALJ may not 'cherry pick' evidence."); *id.* at 20 ("the ALJ focused on cherry-picked . . . evidence"); *id.* at 23 ("The ALJ completely cherry-picked the record . . ..").  But other than incorrectly asserting that the ALJ ignored her need for a supportive living arrangement—and citing records that suggest mental health issues that Drs. Brown, Bhutwala, and Santarpia addressed—Jennifer offers nothing in support of that repeated conclusion.  She cites no medical opinions that support her argument, nor does she cite any facts other than those connected with her supportive living arrangements.  *See id.* at 16–23 (section of Jennifer's memorandum arguing that the ALJ "cherry-picked the record").  Because the ALJ indeed addressed Jennifer's need for supportive living and because he relied on opinion evidence explicitly finding that Jennifer had the capacity to work, Jennifer's argument is misplaced.

Finally, it is worth noting that "[a]n ALJ does not have to state on the record every reason justifying a decision," *Valdez-Ocasio v. Kijakazi*, 2023 WL 3573761, at *1 (2d Cir. May 22, 2023) (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)); rather, so long as an ALJ's decision provides "an adequate basis for meaningful judicial review . . . and is supported by substantial evidence," there is no error, *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("[R]emand is not required where the evidence of record permits [the Court] to glean the rationale of an ALJ's decision." (citation modified)).  And that is precisely the case here.

In sum, the ALJ appropriately considered Jennifer's impairments in light of her supportive housing and other evidence in the record. And while Jennifer may disagree with the weight the ALJ assigned to each piece of evidence, it is not the function of this Court to re-weigh that evidence or to determine *de novo* whether Jennifer is disabled. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Because the ALJ was "entitled to weigh all of the evidence available to make a[] . . . finding that was consistent with the record as a whole," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), and because the ALJ did just that, his decision was supported by substantial evidence. This Court will not second-guess it. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

## CONCLUSION

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, and for the reasons stated above, Jennifer's motion for judgment on the pleadings, Docket Item 6, is DENIED, and the Commissioner's cross motion for judgment on the pleadings, Docket Item 13, is GRANTED. The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:   May 5, 2026
         Buffalo, New York

*/s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

13